**UNITED STATES of America, Plaintiff,**

v.

**MODES, INC., and Jaikishan C. Budhrani, Defendants.**

**Court No. 89–04–00206.**

United States Court of International Trade.

Oct. 5, 1989.

Stuart E. Schiffer, Acting Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Platte B. Moring, III and Elizabeth C. Seastrum, Washington, D.C., for plaintiff.

Golden, Potts, Boeckman & Wilson, Claude R. Wilson, Jr., Dallas, Tex., William S. Lee and Alan J. Hostetter, for defendants.

## OPINION AND ORDER

CARMAN, Judge:

Plaintiff United States of America (the government) initiated this suit pursuant to 28 U.S.C. § 1582 (1982) and 19 U.S.C. § 1592 (1982) to recover a civil penalty from defendants for misrepresenting the value of imported costume jewelry from Taiwan. The government in its complaint seeks recovery of a penalty against the defendants jointly and severally in the amount of the value of the imported merchandise with interest, or in the alternative in an amount appropriate to the level of culpability found by this Court after a trial. Defendants Modes, Inc. (Modes), and Jaikishan C. Budhrani, move to dismiss the complaint under Rule 12(b)(1) for lack of subject matter jurisdiction, or in the alternative to dismiss the complaint as premature. For the reasons set forth below, this Court denies the motion.

## BACKGROUND

The complaint in this case alleges the defendants, through fraud, gross negligence or negligence, declared in their entry papers only approximately half of the true invoice value of seventy-four shipments of costume jewelry imported from Taiwan in 1984. The government in its response to Defendants' Motion to Dismiss contends that Modes, its president and sole shareholder Mr. Budhrani, and ITAI International Co., Ltd. of Taipei engaged in a dual invoicing scheme designed by ITAI to avoid income taxes in Taiwan.

After various administrative efforts to obtain pertinent documents from Modes relevant to the alleged dual invoicing scheme, the United States Customs Service (Customs) issued a pre-penalty notice to Modes in April of 1988 proposing a $3,867,-856.00 penalty. Thereafter, in August of 1988, Customs issued a penalty notice which demanded payment of the same sum. Pursuant to 19 U.S.C. §§ 1592 and 1618 and pertinent federal regulations, Modes submitted a petition for remission or mitigation of the penalty on September 19, 1988. On February 15, 1989 an attorney with the Penalties Branch of the Office of Regulations and Rulings, Customs, met with Modes' attorney Claude R. Wilson, Jr., and a Modes investigator, Tim Millis, to discuss the case. On February 28, 1989 Customs Headquarters rendered a final written determination on the petition for remission or mitigation and forwarded the response to Modes. The determination advised Modes that Customs was willing to mitigate the $3,867,856.00 penalty to $966,-964.00. Both the determination and the cover letter stated that Modes could submit a supplemental petition for remission or mitigation of penalty provided it was filed within ten days and included a waiver of the statute of limitations. The cover letter notified Modes that absent timely execution of the waiver, the case would be referred to the U.S. Attorney for prosecution.

Modes submitted a supplemental petition to the Secretary of the Treasury on March 10, 1989. However, the supplemental petition did not include a waiver of the statute of limitations. Consequently, on March 15, 1989, Customs forwarded the supplemental petition to the Department of Justice in conjunction with its formal referral of the matter for prosecution. The summons and complaint were filed on April 20, 1989.

## CONTENTIONS OF THE PARTIES

Defendants primarily base this motion on the contention that subject matter jurisdiction is not properly in this Court because the government failed to exhaust its administrative remedies, and this Court does not have subject matter jurisdiction over Mr. Budhrani in his personal capacity.

Defendants claim jurisdiction does not lie ·in this Court because of Customs' failure to provide them a hearing and because Customs failed to issue a final determination on Modes' supplemental petition for remission or mitigation under 19 U.S.C. § 1592 and corresponding regulations before referral for prosecution. Defendants argue that "[a]ccording to the administrative regulations, Modes is entitled to have the Department of Treasury consider its supplemental petition (19 C.F.R. § 171.32) and is entitled to an oral hearing (19 C.F.R. § 171.14) *before* [the government] may refer a case to the U.S. Attorney." Memorandum In Support Of Defendants' Motion To Dismiss Under Rule 12(b)(1) Or, In The Alternative, Motion To Dismiss The Complaint As Premature, (Defendants' Memorandum) at 4–5 (emphasis in original).[1] In effect, Defendants argue that exhaustive compliance with the administrative procedures is a condition precedent to a suit by the government for the penalty in this Court.

The government claims that as a legal matter the alleged failure of Customs to provide Modes with an opportunity to participate at the administrative level does not bar a penalty enforcement action by Customs in this Court. Additionally, as a factual matter, the government contends Modes was in fact given both an oral hearing and a final determination in accordance with the statutes and regulations.

As to the lack of subject matter jurisdiction over Mr. Budhrani, Defendants argue that since Mr. Budhrani was not named personally in any of the documents or proceedings at the administrative level, the prerequisites of 19 U.S.C. § 1592 were not satisfied making subject matter jurisdiction over him improper. Additionally, defendants argue in one sentence of their brief that subjecting Mr. Budhrani to suit in this Court would deprive him of due process since the pre-penalty notice, the penalty notice and the February 28, 1989 letter only named Modes, nowhere mentioning Mr. Budhrani in his individual capacity.

The government, relying on *United States v. Priority Products Inc.*, 4 Fed.Cir. (T) 88, 793 F.2d 296 (1986), *aff'g* 9 CIT 383, 615 F.Supp. 591 (1985), claims that as a statutory matter, failure of Customs to name Mr. Budhrani in his individual capacity in the penalty and pre-penalty notices does not divest this Court of jurisdiction over him pursuant to 19 U.S.C. § 1592. The government further argues that following the principle articulated in *Nickey v. Mississippi*, 292 U.S. 393, 396, 54 S.Ct. 743, 744, 78 L.Ed. 1323 (1934),[2] trial *de novo* in this Court would provide Mr. Budhrani with all the due process protection he is

---

1. Defendants rely upon the following sections of the Code of Federal Regulations, the pertinent parts of which are set out below.

   **§ 171.14  Oral presentations seeking relief.**
       (a) *For certain violations*—(1) *Right to make oral presentation.* If the penalty incurred is for a violation of [19 U.S.C. § 1592], for which proceedings commenced after December 31, 1978, the person named in the notice also may make an oral presentation seeking relief in accordance with this paragraph....
       (2) *Prerequisites.* The person shall be given reasonable opportunity to make an oral presentation provided that a petition has been filed under [19 C.F.R.] § 171.12, and that the petition contains a request to present orally the reasons for remission or mitigation of the penalty.
       ....
   19 C.F.R. § 171.14 (1988).
   **§ 171.31a  Written decision.**
       If a petition or supplemental petition ... for relief relates to a violation of [19 U.S.C.

   § 1592], ... the petitioner shall be provided with a written statement setting forth the decision on the matter and the findings of fact and conclusions of law upon which the decision is based....
   19 C.F.R. § 171.31a (1988).
       The Court notes that 19 C.F.R. § 171.24 regarding limitations on consideration of petitions and 19 C.F.R. § 171.32 regarding limitation on the time of a decision's effectiveness are also pertinent to this case as each one appears to contemplate administrative deference to a suit filed by the Justice Department for civil enforcement of penalties.

2. In support of this argument the government cites *Renegotiation Board v. Bannercraft Clothing Co., Inc.*, 415 U.S. 1, 23, 94 S.Ct. 1028, 1040, 39 L.Ed.2d 123 (1974); *Lichter v. United States*, 334 U.S. 742, 791, 68 S.Ct. 1294, 1319, 92 L.Ed. 1694 (1948); *Hagar v. Reclamation District*, 111 U.S. 701, 4 S.Ct. 663, 28 L.Ed. 569 (1884) and; 2 K. Davis, *Administrative Law Treatise* § 12:13 (2nd ed. 1979).

entitled to under the constitution. Since Mr. Budhrani was not actually deprived of property or otherwise prejudiced by the administrative process, the government contends, he should not be dismissed from this law suit where he will have an opportunity for a *de novo* trial on all issues.

## DISCUSSION

■ This Court determines the decision by the Court of Appeals for the Federal Circuit in *Priority Products* mandates denial of defendants' motion in all aspects, as its facts are virtually identical to the case at bar. The Court will examine Mr. Budhrani's individual claims first.

*Priority Products* involved an action under 19 U.S.C. § 1952 against Priority Products, Inc. and Mr. and Mrs. Walter L. Huss (sole shareholders of Priority Products, Inc.). Prior to institution of the suit, Customs had not sent pre-penalty or penalty notices to Mr. and Mrs. Huss, in their individual capacities. The pre-penalty notice was sent to "Priority Products" alone. The penalty notice was issued to Priority Products and a cover letter mailed to "Walter L. Huss, President." 4 Fed.Cir (T) at 89, 793 F.2d at 297. In response to these and other contacts Mr. Huss appeared in person before Customs and submitted a statement signed "Walter Huss." *Id.* After the penalty had been mitigated the government instituted suit in this Court against Priority Products, Inc., and Mr. and Mrs. Huss individually.

The Husses filed a motion for summary judgment arguing that Customs' failure to name them individually in the pre-penalty and penalty notices precluded the Court from exercising subject matter jurisdiction over them and deprived them of due process under the fifth amendment. The Court of Appeals, affirming Judge Restani's decision finding subject matter jurisdiction, presented the issue as

> whether the United States Customs Service's failure to name corporate officers in their individual capacities in written administrative pre-penalty and penalty notices issued pursuant to 19 U.S.C. § 1592(b) (1982) precludes suit against

them in the Court of International Trade to recover a penalty originally assessed only against the corporation.

*Id.* at 88, 793 F.2d at 297. The Court found narrowly, on the basis of the facts of the case, that jurisdiction was properly maintained over both Mr. and Mrs. Huss, as well as Priority Products. Additionally, the Court found that the Husses' due process claims were meritless. *Id.* at 93, 793 F.2d at 300.

In a thorough examination of the statutory and regulatory scheme, the Court found nothing in the statute or its legislative history to demonstrate that Congress intended to narrowly circumscribe the subject matter jurisdiction of this Court to encompass only those suits brought by the government against parties expressly named in the administrative proceeding. *Id.* at 91, 793 F.2d at 299. The Court noted the language of the statute appeared to suggest otherwise. The Court stated "it appears that so long as some 'civil penalty exists' the Court of International Trade can assume jurisdiction over any complaint to recover that penalty, and the issue of who is ultimately responsible for payment of the penalty is subject to *de novo* consideration." *Id.* at 91–92, 793 F.2d at 299. The Court also noted other considerations which compelled the conclusion that "Congress did not intend that formal compliance with each procedure set forth in 19 U.S.C. § 1592 as to every party that might be called upon to pay the penalty be a jurisdictional prerequisite to suit under section 1582." *Id.* at 92, 793 F.2d at 299.

The Court expressed four concerns militating against requiring individuals to be served with the pre-penalty and penalty notices as a prerequisite to subject matter jurisdiction in this Court. (1) It would unduly burden Customs to have to identify, serve and hear all possible parties. (2) It would "permit those directly responsible for a violation of the customs laws to avoid liability," or unduly delay enforcement of the laws. (3) "[F]ailure to provide adequate notice or opportunity to participate at the administrative level is generally not perceived as a jurisdictional prerequisite to

an enforcement action brought by the agency." (4) A claim of failure to exhaust administrative remedies, while applicable to an agency seeking to enforce a penalty "is not strictly speaking a jurisdictional requirement and hence the court may waive that requirement and reach the merits of the complaint." *Id.* at 92–93, 793 F.2d at 299–300.

Continuing, the Court noted that the Husses' lack of subject matter jurisdictional claim was more properly characterized as one concerning personal jurisdiction. The Court stated "[e]ven if such personal jurisdiction were a prerequisite at the pre-penalty notice stage, constructive notice would suffice or could be waived." *Id.* at 93, 793 F.2d at 300. Concluding, the Court stated

> We therefore hold that the failure to serve corporate officers/directors/shareholders with written notice of their potential liability does not deprive the Court of International Trade of subject matter jurisdiction over a complaint against those persons to recover a civil penalty originally assessed against the corporation.

*Id.*

The Court also found that the Husses' due process rights had not been violated, without deciding whether the trial *de novo* had afforded the Husses all the process they were due.

In analyzing the Husses' due process claim, the Court found that Mr. Huss had actual notice of the potential for personal liability for the penalty. The Court based this upon his personal appearance before Customs and his retention of an attorney in the matter. *Id.*, 793 F.2d at 300–01. However, the Court found that while Mrs. Huss could not be considered to have actual notice of the potential for liability, she had constructive notice. The Court stated that "we are of the view that as one of only two employees/officers/shareholders of a small family corporation, Mrs. Huss *was or*

*should have been aware* that under the circumstances she could be held accountable for Priority's liabilities." *Id.* at 94, 793 F.2d at 301 (emphasis added). Thus constructive notice proved sufficient to subject Mrs. Huss to suit in her individual capacity where it was assumed she did not have actual notice.

In the case at bar, there can be no doubt that Mr. Budhrani had constructive if not actual notice of the penalty proceeding and the possibility of personal liability. Mr. Budhrani was not only the sole shareholder of Modes, Inc., he characterized himself alternatively as the president and vice president of the company. See Plaintiff's Opposition To Defendants' Motion To Dismiss (Plaintiff's Opposition Memorandum) at 15 n. 18 and Exhibit B (Transcript of December 16, 1985, Hearing Before Magistrate John B. Tolle) at 73. Mr. Budhrani also appeared with counsel and testified in a summons enforcement proceeding related to discovery in this case. *Id.*, Exhibit B. Furthermore, Mr. Budhrani personally notified his attorney Mr. Wilson, by letter on Modes, Inc., stationery, not to comply with an administrative summons served on Modes by Customs. *Id.*, Exhibit A.

Based on this Court's reading of *Priority Products* outlined above, Mr. Budhrani cannot avoid personal jurisdiction in this Court merely because he was not individually notified in Customs' pre-penalty and penalty notices. 4 Fed.Cir. (T) at 93, 793 F.2d at 300. Additionally, as Mr. Budhrani was or should have been aware of his potential individual liability, his due process claim cannot prevail.[3]

Defendants' claim that this Court lacks subject matter jurisdiction over any of the parties including Modes, Inc., is equally unavailing. Cognizant of the fact that administrative agencies are not immune from the requirement of exhausting administrative remedies, this Court finds nevertheless it does not affect this Court's subject matter jurisdiction. As noted in

---

**3.** Like the Court in *Priority Products,* this Court has reached decision on this motion without addressing the government's contention that the doctrine established in *Nickey v. Mississippi,* 292

U.S. 393, 54 S.Ct. 743, 78 L.Ed. 1323, and its progeny applies to suits brought in this Court under 19 U.S.C. § 1592.

*Priority Products,* this Court has explicit authority to waive exhaustion of administrative remedies "where appropriate." *Id.* (quoting 28 U.S.C. § 2637(d)); *Cf., Al Tech Specialty Steel, Corp. v. United States,* 11 CIT ——, 661 F.Supp. 1206, 1209–10 (1987) (and citations therein).

In this case, defendants' failure to submit an extension of the statute of limitations left Customs no choice but to institute suit. If Customs had delayed any longer the statute of limitations would have run and the government's right to recover would have been lost forever. This case is a proper instance for the Court to waive any ostensible failure by Customs to exhaust its administrative remedies.

 Nevertheless, on the facts of this case, Modes, Inc., was in fact afforded ample opportunity to achieve the administrative remedies available to it under the statute and regulations. Modes was given an oral presentation before the agency. See Plaintiff's Opposition Memorandum, Exhibit C, Declaration of Burton L. Schlissel. Thereafter, Modes was also provided a final written determination stating findings of fact and conclusions of law supporting Customs' decision to mitigate the penalty as required by 19 C.F.R. § 171.31a. See Defendants' Memorandum, Affidavit of Alan J. Hostetter, Exhibit B (cover letter dated March 1, 1989 and Determination dated February 28, 1989).

Defendants' supposed grievance seems to be that it should have been given another oral hearing and another ruling on the basis of its supplemental petition for remission or mitigation prior to institution of suit in this Court. This Court refuses to create such a requirement where the statute itself is silent. While it is true that under ordinary circumstances Customs should rule on such petitions before instituting suit in this Court, in this case, Customs' failure to provide a written decision on Modes' supplemental petition cannot operate to preclude suit in this Court where to do so would almost certainly result in the running of the statute of limitations. Furthermore, it is abundantly clear to this Court that defendants were given ample opportunity to press their arguments for remission or mitigation of the penalty prior to Customs' determination and the institution of this suit.

### CONCLUSION

On the basis of the foregoing, defendants' motion to dismiss the complaint for lack of subject matter jurisdiction, or in the alternative as premature, against Modes, Inc., and Mr. Budhrani in his individual capacity is denied.